# EXHIBIT 5

| From: Demands Team | Fax: 14242994595 | To: | Fax: (855) 820-6318 | Page: 2 of 97 | 07/11/2019 8:33 AM |



10900 Wilshire Boulevard, 15th Floor
Los Angeles, California 90024
Tel: 310.312.3300
Fax: 310.882.5444
www.jacobyandmeyers.com

Writer's Email Address:
mspooner@jacobyandmeyers.com

July 11, 2019

**VIA FACSIMILE**
**State Farm**
**Attn: Claim No. 033286K20**
**Facsimile: (855) 820-6318**

    Our Client     : Phillip Major
    Your Insured  : Donald Albert Zimprich
    Claim Number : 033286K20
    Date of Loss   : 2/23/2018
    File Number   : 182457

### DEMAND FOR POLICY LIMITS AND NOTICE OF EXPOSURE TO INSURED AND INSURANCE CARRIER

Dear Claims Adjuster:

    As you are aware, this office represents Phillip Major **("Client")** in connection with the above-captioned automobile accident. In an effort to resolve this case without initiating litigation, please accept this settlement demand package as our Client's good faith attempt to resolve this case without either party having to incur substantial litigation expenses. **Demand is hereby made for your policy limits.**

Attached hereto are the following Exhibits:

| Number | Description |
| --- | --- |
| 1. | Medical Billing and Records for Phillip Major |
| | a. Parehjan & Vartzar Chiropractic, Inc. |
| | b. Glenoaks Imaging Professionals |
| | c. Andrew Fox, MD Inc. |
| | d. Narinder S. Grewal, MD |
| | e. Santa Clarita Surgery Center |

P a g e | 1

Attached hereto as **SCHEDULE A** are the Policy Existence and Employment Declarations for your insured's signature, as requested herein.

## I.   LIABILITY

Based on the clear and unambiguous physical evidence and the statements of the respective parties, liability on behalf of your insured is indisputable. Your insured will be held responsible for the damages and injuries because he breached mandatory duties imposed by the California Vehicle Code ("CVC"). As you know, these breaches mean he is automatically liable.

The CVC establishes the level of care required. If a driver does not comply with the CVC, that driver is negligent per se. The relevant code sections include, but are not limited to, the following: **California Vehicle Code § [22350] [Unsafe Speed for Condition]**. Indeed, a jury would receive very special instructions which make it easy- and mandatory- that they find liability.

Since the California Vehicle Code establishes the standard of care required to operate a motor vehicle in most cases, conduct which falls below this statutory standard is negligence *per se*, or negligence as a matter of law. *Aldrid v. Vanier* (1958) 50 Cal.2d 617, 621; *Shehtadian v. Kenny* (1958) 156 Cal. App.2d 576. Evidence Code § 669 codifies the doctrine of negligence per se. Accordingly, not only will the jury be instructed by *California Civil Jury Instructions, CACI 401, Basic Standard of Care* which provides that: "Negligence is the failure to use reasonable care to prevent harm to oneself or to others," the jury will be further instructed by *California Civil Jury Instructions, CACI 418, Presumption of Negligence per se* which will state:

**If you decide that:**

1. Defendant **operated his vehicle at a speed greater than reasonable or prudent at the time or followed too closely**, and

2. That the violation was a substantial factor in bringing about the harm,

**Then you must find your insured was negligent.**

As set forth above, this test will be easily satisfied under these circumstances and a jury will be instructed that your insured was negligent as a matter of law.

## II.   CAUSATION

Likewise, a jury would receive instruction on the necessary relationship between the negligence and the injury. This relationship is slight and the bar is quite low to meet for our Client. It will easily be met here. As a result, the jury will receive very special instructions which make it easy - and mandatory - that they find causation.

***Civil Jury Instructions, CACI 430, Causation: Substantial Factor***:

P a g e | **2**

A substantial factor in causing harm is a factor that a reasonable person would consider to have **contributed to the harm**. It must be more than a remote or trivial factor. It does not have to be the only cause of the harm.

The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual be more than a negligible or theoretical cause. ***Bockrath v Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 79.** As you can see above, all that a jury must find is that the Defendant's decision "contributed" to the harm suffered by my client. It is undisputable that a jury would come to such a conclusion under these circumstances.

Obviously, the failure to exercise reasonable care caused the accident. Your insured's actions and inactions were, beyond question, a "substantial factor" in bringing about the injuries.

### III. INJURIES/DAMAGES

The following is a detailed itemization of our Client's injuries and medical expenses:

- **Injury Diagnoses**
    - L4-L5 there is a posterior annular tear
    - L4-L5 4 mm left paracentral disc protrusion resulting in abutment of the descendinf left L5 nerve root with narrowing of the lateral recess. There is a 3 mm right formainal disc protrusion resulting in abutment of the exiting righ L4 nerve root. There is narrowing of the right neural foramen
    - L5-S1 3 mm circumferential disc protrusion resulting in abutment of the descending S1 nerve roots bilaterally as well as abutment of the exiting right and left L5 nerve roots. There is retrolisthesis of L5 on S1. There is a central canal narrowing as well as narrowing of the neural foramina bilaterally. There is facet arthropathy
    - L3-L4 2 mm midline disc protrusion resulting in effacement of the anterior thecal sac.
    - Cervical radiculopathy: neck pain that radiates into right scapular with associated numbing sensation
    - Lumbar radiculopathy: constant low back pain that radiates to left buttock pain with associated pins and needle sensation
    - Lumbar radiculopathy: low back pain that radiates to the right leg associated with numbness and weakness
    - Weakness, numbness, tingling sensation and paresthesia of the right arm
    - L2-L3 1 mm midline disc bulge
    - Cervical spine sprain/strain
    - Lumbar spine neuritis/radiculitis
    - Lumbago
    - Lumbar myalgia

P a g e | 3

- Lumbosacral subluxation
- Lumbar spine sprain/strain
- Lumbar enthesopathy
- Thoracic spine sprain/strain
- Thoracalgia
- Thoracic myalgia
- Thoracolumbar subluxation
- Insomnia

- **Procedures**
  - **1/21/19** – Left lumbar epidural steroid injection at L4-L5 and L5-S1 levels was performed by Dr. Narinder S. Grewal.
  - **2/4/19** – Left lumbar epidural steroid injection at L4-L5 and L5-S1 levels was performed by Dr. Narinder S. Grewal.
  - **3/25/19** - Left lumbar epidural steroid injection at L5-S1 levels was performed by Dr. Narinder S. Grewal.

- **Past Medical Expenses/Bills**

| (1) | Parehjan & Vartzar Chiropractic, Inc. | $2,850.00 |
| (2) | Glenoaks Imaging Professionals | $2,150.00 |
| (3) | Andrew Fox, MD Inc | $1,250.00 |
| (4) | Narinder S. Grewal, MD | $18,350.00 |
| (5) | Santa Clarita Surgery Center | $31,500.00 |

| **Total Past Medical Bills** | **$56,100.00** |

- **Past Pain and Suffering**            **$165,000.00**

- **Future Medical Expenses/Bills**

| (1) | Discectomy and fusion surgery | $150,000.00 |

| **Total Future Medical Bills** | **$150,000.00** |

- **Future Pain and Suffering**            **$100,000.00**

**Total Damages Suffered by Phillip Major**            **$471,100.00**

P a g e | 4

### IV. IMPACT ON LIFE

Since the accident, our Client's physical limitations and pain have changed his life in a profound manner. Our Client has had trouble sleeping, exercising, performing household chores, and above all making a living for himself. In sum, our Client has had an abysmal outcome as a result of this accident and he continues to endure one of the most grueling, frustrating and emotionally draining periods of his life.

### V. SETTLEMENT DEMAND

We are at this point willing and authorized to settle the entirety of the action against your insured for your insured's policy limits. Payment would be in exchange for a full release of all claims and potential claims against your insured arising out of this case by Mr. Major.

As you must know, a jury verdict above the policy limits would expose your insured's personal assets which could be devastating to him and his family whose investments, home, autos, and savings are at risk. Further, the moving of any assets by your insured would be fraudulent and without ultimate effect.

Thus, each and every one of your insured's assets would be in jeopardy by the failure to tender the policy limits. This risk can be completely eliminated by payment of the policy limits by the carrier.

**When tendering your limits, please also provide our office with the following (See SCHEUDLE A):**

1. Your insured's declarations page;

2. A declaration signed by your insured under penalty of perjury indicating whether your insured was under the course and scope of employment at the time of the accident; and

3. A declaration signed by your insured under penalty of perjury indicating whether any other insurance policies could potentially cover this loss.

### VI. EXPOSURE

As I am sure you are well aware, an insurer owes an affirmative duty to accept a settlement demand within policy limits when there is a substantial likelihood of a judgment in excess of those limits. *Crisci v. Security Insurance Company* (1967) 66 Cal.2d 425; *Garner v. American Mutual Liability Insurance Company* (1973) 31 Cal.App3d 843, 847-848. [as to the "crucial issue" of a liability insurer's duty to accept reasonable settlement offers within policy limits, the duty to consider and weigh all of the facts bearing upon the advisability of a settlement in the interest of the insured is upon the insurance carrier as well as the duty to "consider, accept or make a reasonable settlement offer." (Emphasis added)].

From: Demands Team   Fax: 14242994595   To:   Fax: (855) 820-6318   Page: 7 of 97   07/11/2019 8:33 AM

Moreover, the implied covenant imposes upon the insurer the duty to communicate to the insured the results of any investigation indicating liability in excess of policy limits, *Davy v. Public National Insurance Company* (1960) 181 Cal.App.2d 387, 396, as well as the duty to inform its insured of all consequences, particularly financial consequences which could occur regarding a failure to settle within policy limits. *Transit Casualty Company v. Spink Corporation* (1979) 94 Cal.App.3d 124, 137, disapproved only on other grounds in *Commercial Union Insurance Company v. Safeway Stores* (1980) 26 Cal.3d 912, 921.

Further, where an insurer unreasonably fails to protect its insured from a compensatory judgment in excess of that insured's policy limits by failing to accept a settlement offer within policy limits, the insurer is responsible for the entirety of the excess judgment. Please note that if a judgment in excess of the policy limits is entered against your insured, when you have had the opportunity to settle this matter within the policy limits, your company will be held responsible for the excess. (*Silberg v. California Life Ins. Co.* (1974) 11 C3d 452, 113 CR 711).

Our Client does not presently intend to seek assignment of any future bad faith from your insured, and thus excess exposure to your insured is certain. We fully intend at this time to levy as against your insured's personal assets upon a judgment in excess of your policy limits, if you fail to tender the policy. However, same will be option in the event of an "excess verdict" and thus we seek to advise you of possible consequences in that regard.

The law of "bad faith" is well established in California: A carrier is liable in bad faith to its insured (which may assign any such claim to our Client in the underlying case) for the unreasonable failure to settle for the policy limits when such demand is made in exchange for a full release. (See: e.g., *Silberg v. California Life Ins. Co.*, 1974, 11 C3d 452, 113 CR 711).

The California Civil Jury Instructions (CACI) is also instructive.

*CACI 2334 Bad Faith (Third Party)—Refusal to Accept Reasonable Settlement Within Liability Policy Limits—Essential Factual Elements*

[Name of plaintiff] claims that [he/she/it] was harmed by [name of defendant]'s breach of the obligation of good faith and fair dealing because [name of defendant] failed to accept a reasonable settlement demand in a lawsuit against [name of plaintiff]. To establish this claim, [name of plaintiff] must prove all of the following:

1. That [name of plaintiff in underlying case] brought a lawsuit against [name of plaintiff] for a claim that [[he/she/it] alleged] was covered by [name of defendant]'s insurance policy;

2. That [name of defendant] failed to accept a reasonable settlement demand for an amount within policy limits; and

3. That a monetary judgment was entered against [name of plaintiff] for a sum greater than the policy limits.

"Policy limits" means the highest amount available under the policy for the claim against [name of plaintiff].

A settlement demand is reasonable if [name of defendant] knew or should have known at the time the settlement demand was rejected that the potential judgment was likely to exceed the amount

5c1919205755WPSD4WK9 Received 7/11/2019 11:34:33 AM [Eastern Daylight Time]

of the settlement demand based on [name of plaintiff in underlying case]'s injuries or loss and [name of plaintiff]'s probable liability.

### *CACI 2330 - "Implied Obligation of Good Faith and Fair Dealing Explained*

In every insurance policy there is an implied obligation of good faith and fair dealing that neither the insurance company nor the insured will do anything to injure the right of the other party to receive the benefits of the agreement.

To fulfill its implied obligation of good faith and fair dealing, an insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests.

To breach the implied obligation of good faith and fair dealing, an insurance company must, unreasonably or without proper cause, act or fail to act in a manner that deprives the insured of the benefits of the policy. It is not a mere failure to exercise reasonable care. However, it is not necessary for the insurer to intend to deprive the insured of the benefits of the policy."

### VII.   CONCLUSION

Our offer of settlement as set forth herein shall remain open until **July 25, 2019**, at which time it will be withdrawn and not renewed. In the meantime, we request that you provide a copy of this letter to your insured post haste and advise your insured of their right to secure their own outside counsel.

Many thanks in advance for your anticipated cooperation.


Very truly yours,
Jacoby & Meyers Attorneys LLP

/s/
Muge Spooner on behalf of
Maya Roshani
Attorney at Law

Enclosures

cc:   file